[No. B017169. Second Dist., Div. Four. Jan. 6, 1987.]

PAUL G. CONGLETON et al., Plaintiffs and Appellants, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. et al., Defendants and Respondents.

COUNSEL

John C. McCarthy and Mary Richardson for Plaintiffs and Appellants.

Kern & Wooley, Ralph S. LaMontagne, Jr., and Allan J. Favish for Defendants and Respondents.

OPINION

ARGUELLES, J.—Appellants, Paul C. Congleton and Dorothy H. Congleton, appeal from the summary judgment entered in favor of respondents, National Union Fire Insurance Company of Pittsburgh, Pa., Southeastern Aviation Underwriters, Inc., and Southeastern Aviation (California) Insurance Service, and from an order denying them leave to file an amended complaint. We affirm the judgment and the order.

Appellants filed a complaint for damages against respondents for tortious denial of their property loss claim under an aviation insurance policy, alleging causes of action for breach of statutory duties under Insurance Code section 790.03, subdivision (h), breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and breach of fiduciary duties.

FACTS

In February 1979, appellants purchased a new twin-engine Piper Navajo Chieftain aircraft and then leased it to Baja Cortez Airlines, a corporation of which Paul Congleton was a member of the board of directors, president and a stockholder.

During the period of the lease, Baja Cortez decided to sublease the aircraft for financial reasons. In anticipation of the sublease, Paul Congleton contacted respondents' agent, William Tassio, to procure aviation insurance coverage. Congleton told Tassio that he intended to lease the aircraft to R. Bruce Allender, and Tassio subsequently interviewed Allender over the tele-

phone as to the proposed lease terms. On July 28, 1980, Tassio issued, on respondents' behalf, a binder of insurance for the aircraft effective the following day. The insurance binder listed the named insureds as "Paul C. & Dorothy H. Congleton (Lessor) and R. Bruce Allender (Lessee)" and provided that, "It is expressly stipulated that this binder is issued (1) subject to all the terms and conditions of the policy regularly issued by the Company in the state in which the operation or property is located, which policy is hereby made a part hereof to the same extent as if fully set forth herein, (2) .... [¶] ... This binder is made and accepted subject to the foregoing stipulations and conditions ...."

On August 1, 1980, Baja Cortez entered into the sublease with Allender and delivered possession of the aircraft to him through his agent, Ralph Boone, in Knoxville, Tennessee.

On August 5, 1980, respondents issued a policy of aviation insurance to appellants, naming appellants and Allender as insureds and "lessor" and "lessee," respectively, as on the binder.

The "Declarations" page of the policy provided, in part, that, "The aircraft will be used only for the purposes indicated by 'X' below (see Definitions). [¶] ... X *'Pleasure and Business.'* "

The relevant "insuring agreements" portion of the policy provided as follows:

"Coverage F—All Risk Basis  To pay for any *physical damage* loss to the aircraft, including *disappearance* of the aircraft. [¶] Coverage G—All Risk Basis Not in Flight  To pay for any *physical damage* to the aircraft sustained while the aircraft is not in flight and which is not the result of fire or explosion following crash or collision while the aircraft was in flight. [¶] Coverage H —All Risk Basis Not in Motion  To pay for any *physical damage* loss to the aircraft sustained while the aircraft is not in motion and which is not the result of fire or explosion following crash or collision while the aircraft was in motion."

Among the express policy "exclusions" to these coverages were the following:

"This policy does not apply: [¶] 1. To any insured while the aircraft is in flight with the knowledge and consent of such insured or of any executive officer, partner, or managing agent of such insured for any unlawful purpose, or any purpose not so designated in the Declarations. [¶] .... 6. Under Coverages F, G and H [¶] (a) to loss or damage due to conversion, embezzle-

ment or secretion by any person in possession of the aircraft under a bailment, lease, conditional sale, purchase agreement, mortgage or other encumbrance, nor for any loss or damage during or resulting therefrom; . . ."

The relevant words appearing in "bold face print" (italicized above) in these provisions were defined as follows: " 'Disappearance' means missing and not reported for sixty days after commencing a flight." " 'Physical Damage' means direct and accidental physical loss of or damage to the aircraft, hereinafter called loss, but does not include loss of use or any residual depreciation in value, if any, after repairs have been made." " 'Pleasure and Business' means used in the business of the insured including personal and pleasure uses but excluding any operation for hire or reward. . . ."

The aircraft was last seen at the Knoxville airport on August 5, 1980. The aircraft has not since been located.

While little is apparently known about the aircraft's mysterious disappearance, information accumulated by respondents about Allender and Boone suggests at least one very plausible, if not likely, scenario that may be relevant here.

It seems that in April 1980, four months before respondents insured appellants' aircraft, respondents insured a similar aircraft owned by Reed Harman that also happened to be the subject of a lease to Allender, a named insured under the Harman policy. The aircraft lease between Harman and Allender happened to be executed by Boone, who was also known as Richard Wellens, on Allender's behalf. As appellants explain, "On or before June 23, 1980, the Harman aircraft had been seized in Columbia [sic], South America, for illegal entry." Harman submitted a theft claim under the policy, though the aircraft was never recovered, and respondents compromised and settled the claim in the amount of $20,000.[1]

Upon investigation of the Harman loss, respondents learned that Boone, in conjunction with an aircraft broker named Richard Peacock and others, including persons known as the "Pounders Brothers," was implicated in a ring of international drug smugglers who stole twin-engine, long distance aircraft such as appellants' for use in drug smuggling between Colombia,

---

[1]This consisted of cash paid directly to the Harmans. In addition to this $20,000 paid to the Harmans, respondents paid $262,439.65 plus interest to the lender which held a security interest in the aircraft and granted the Harmans a right to a percentage of the aircraft's salvage value in the event it was recovered.

Here, although no cash payment was made directly to appellants, respondents did pay $67,500 to the lender holding a security interest in the appellants' aircraft.

South America, and the United States. Apparently, law enforcement agents in the United States had actually photographed Boone removing seats from one of the aircraft, owned by Baja Cortez and insured by respondents, for the purpose of installing internal auxiliary fuel tanks. Later, Boone and one of his pilots were convicted of conspiracy to smuggle drugs into the United States and sentenced to prison. In the course of proceedings against them, the pilot revealed that he had flown another aircraft insured by respondents and crashed another in a lake or river in Colombia. Respondents commenced investigations on at least three other aircraft losses they had insured against that occurred under similar circumstances, including two others involving aircraft owned by Baja Cortez. Over time, one of the missing aircraft was recovered in Miami, Florida, without seats while another was reportedly crashed at sea, another located in Colombia and yet another purportedly crash-landed in a Colombian lake or river.

Appellants submitted a claim for the missing aircraft in the amount of $240,000 to respondents under their aviation policy.

Although respondents settled a claim submitted by Crocker National Bank, which held a security interest in the aircraft as lender, respondents denied appellants' claim on the following three grounds: (1) the policy expressly excludes coverage "while the aircraft is in flight with the knowledge and consent of such insured . . . for . . . any purpose not so designated in the Declarations," and the declarations provided that the aircraft would be used only for "pleasure and business" purposes; the aircraft was not being used either by appellants or by their co-insured, Allender, for "pleasure" or "business" at the time of its loss; (2) under exclusion number "6.(a)," quoted above, the policy expressly excludes coverage for conversion or secreting of the aircraft by any person in possession under a lease, and all of the known facts indicated that either Allender or his agent, Boone, had converted or secreted the aircraft; and (3) appellants failed to establish "physical damage" loss to or "disappearance" of the aircraft within the meaning of the policy.

The trial court granted respondents' motion for summary judgment and denied appellants' motion for leave to file an amended complaint; appellants now appeal.

## CONTENTIONS

Appellants contend that the trial court erred in granting summary judgment against them for the following reasons: (1) at the time of its loss the aircraft was not being used for other than "pleasure and business" purposes; (2) regardless of whether the aircraft was stolen on the ground or in flight, the loss was covered by the insurance policy; (3) the coverage exclusion for

losses resulting from "conversion or secretion by any person in possession under a lease" is neither valid nor applicable under the evidence presented; (4) triable issues of fact existed with respect to respondents' waiver of various policy defenses because of their prior knowledge of facts affecting coverage or, alternatively, knowledge of such facts estopped them from relying on the policy defenses asserted; and (5) the temporary insurance binder rather than the policy is controlling because the claimed loss occurred before the policy was delivered.

Appellants further contend that the trial court prejudicially erred in denying them leave to file a first amended complaint.

## DISCUSSION

### Summary Judgment

"[O]n an appeal from a summary judgment, the appellate court has the duty to determine whether a triable issue of material fact exists. [Citation.]" (*Estate of Pitzer* (1984) 155 Cal.App.3d 979, 986 [202 Cal.Rptr. 855].)

"A motion for summary judgment may only be granted where no triable issue of material fact exists and where the moving party's affidavits, declarations, admissions, answers to interrogatories, depositions or judicially noticeable matters set forth sufficient facts to sustain a judgment in its favor. (Code Civ. Proc., § 437c, subd. (b); *Estate of Pitzer* [*supra*] 155 Cal.App.3d 979.)" (*Rincon* v. *Burbank Unified School Dist.* (1986) 178 Cal.App.3d 949, 954 [224 Cal.Rptr. 88].)

Both appellants and respondents urge us to adopt various interpretations of the insurance policy's provisions in determining whether triable issues of material fact exist. Before undertaking an analysis of specific policy provisions, however, we first consider the applicable legal principles upon which our determination of factual materiality will be based.

At the outset we note that appellants' action is essentially one for first party insurance bad faith against respondents for alleged tortious refusal to pay benefits under a policy of aviation insurance following appellants' reported loss of their aircraft while it was subleased to Allender, also a named insured under the policy. " '[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' [Citations.] For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it . . . must give at least as much consideration to the latter's interests as it does to its own.

[Citation.]" (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819 [157 Cal.Rptr. 482, 598 P.2d 452].) One court has observed that "the ultimate test of liability in the first party cases is whether the refusal to pay policy benefits was *unreasonable*." (*Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1, 32 [148 Cal.Rptr. 653]; accord *Paulfrey* v. *Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 192 [197 Cal.Rptr. 501].) Stated another way, "the conduct of an insurer in rejecting a claim is unreasonable if inconsistent with placing the insured's interests above those of the insurance company and its stock holders." (*Fleming* v. *Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 40 [206 Cal.Rptr. 313].) Moreover, "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself," and it has been held that "'[b]ad faith implies unfair dealing rather than mistaken judgment. . . .' [Citation.]" (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54, 55 [221 Cal.Rptr. 171].) When the alleged bad faith conduct consists of the insurer's interpretation of its ambiguous policy to exclude coverage, that interpretation is not conclusive evidence of bad faith unless it is "inherently unreasonable." (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 277 [203 Cal.Rptr. 672].) ■ Finally, we recognize that interpretation of the policy is a *legal* rather than a *factual* determination. (*Nash* v. *Prudential Ins. Co. of America* (1974) 39 Cal.App.3d 594, 602 [114 Cal.Rptr. 299].)

Before turning to the specific policy provisions which respondents have interpreted so as to deny coverage, we begin with the general scope of coverage provided under the "Physical Damage Coverages" in the "insuring agreements" portion of the policy. Appellants contend that all of the physical damages coverages, "F," "G" and "H," begin with reference to an "All Risk Basis," which is the broadest possible coverage.

■ It t has been held that where the words appear in a policy of aviation insurance, "The use of the term 'all risks' ordinarily covers every loss that may happen, except by fraudulent acts of the insured, and is not given a restrictive meaning. Miller v. Boston Insurance Co., 420 Pa. 566, 218 A.2d 275 (1966) and Fidelity Southern Fire Insurance Co. v. Crow, Tex.Civ.App., 390 S.W.2d 788 (1965)." (*Bryant* v. *Continental Insurance Company* (1970) 2 Wn.App. 37 [466 P.2d 201, 202].) ■ Application of such a broad interpretation here finds support in one of the general rules governing interpretation of insurance policies in this state: "'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured . . ., exclusionary clauses are interpreted narrowly against the insurer. . . .' [Citations.]" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764]; *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309].)

■ This rule applies with equal force to the policy definition of the words "Pleasure and Business," which appear on the "Declarations" page of the policy to describe the permitted uses of the aircraft, and hence to describe coverage, under the policy. An examination of the policy definition of "Pleasure and Business," quoted previously, reveals not only a definition of the terms to include "personal and pleasure uses" but an *express exclusion,* "excluding any operation for hire or reward." Thus, contrary to respondents' assertions, we find that to the extent that the definition of "Pleasure and Business" expressly excludes "any operation for hire or reward," that exclusionary language must be narrowly construed so as *not* to mean "rental to others," which appears in the definitions of other uses under the policy.[2]

In light of this interpretation and the fact that respondents knew and expressly noted on the declarations page of the policy that appellants' coinsured, Allender, was a "lessee" of the aircraft from appellant s as "lessor," respondents could not reasonably have denied coverage on the basis that a lease or sublease of the aircraft to another at the time of its loss was not a permitted "Pleasure and Business" use under the policy.

■ Another ground of respondents' denial of coverage was that appellants failed to establish "physical damage" or "disappearance" of the aircraft within the meaning of the "Physical Damages Coverages." Despite the fact that "disappearance" as used in coverage claims "F" is defined in the policy as "missing and not reported for sixty days after commencing a flight," appellants contend that they did not bear the burden of showing that the aircraft commenced a flight immediately before vanishing but instead only had to show "that the aircraft disappeared." Appellants' contention lacks merit.

As respondents correctly assert, "In the absence of physical damage or theft, no recovery under Coverage F is possible unless a 'disappearance' of the aircraft can be demonstrated."

Unable to show that a theft actually occurred—or even that someone wrongfully took possession—appellants essentially urge an interpretation of "disappearance" that is synonymous with a mere inability to locate the aircraft. Such an interpretation would be in clear derogation of an express policy definition of "disappearance," a term used in an insuring clause rather than in an exclusionary clause. Additionally, in a similar case, where an

---

[2] " 'Charter/Air Taxi' means used principally in the business of the insured, including passenger or freight carrying for hire or reward and Pleasure and Business uses, but excluding instruction of or *rental to others.*

" 'Commercial' means used principally in the business of the insured, including student instruction, passenger or freight carrying for hire or ward, *rental to others* for the purpose of Pleasure and Business and those uses defined under Pleasure and Business." (Italics added.)

insuring clause in an aviation policy purported to cover "All Risks While In Motion" and contained language similar to that in appellants' policy here, the court held that, "In the absence of proof of takeoff or that the plane was in motion, plaintiff simply failed to prove a risk within the coverage stated above. [Citation.]" (*Compass Ins. Co.* v. *Palm Beach Lakes, etc.* (Fla. App. 1981) 399 So.2d 517, 518.) Application of this interpretation is particularly compelling here because the aircraft was reported missing within a few weeks after the policy was procured, and appellants apparently made no showing of what efforts, if any, they undertook on their own to investigate the facts and circumstances surrounding the mysterious disappearance of a plane they had recently purchased for almost a quarter of a million dollars and immediately leased and then subleased to people already under investigation for both drug smuggling and similar mysterious disappearances of other aircraft, including at least two owned by Baja Cortez and leased to Allender and Boone through the same broker, Peacock. Appellants' immediate submission of their claim to respondents under these circumstances could be said to reasonably raise respondents' eyebrows in considering the claim.

Accordingly, we find that appellants' failure to sustain their burden of producing evidence of their aircraft's "disappearance" so as to invoke coverage under the policy entitled respondents reasonably to deny coverage under the circumstances presented here.

Alternatively, appellants contend that coverage clauses "G" and "H" applied even if "F," with its "disappearance" requirement, did not. However, the "Declarations" page of the policy, under an item identified as "Description of Aircraft and Physical Damage Coverage hereinunder," lists coverage "F" as the only physical damage coverage for which appellants contracted.

Finally, appellants contend that the broad reading that must be accorded their "all risk" policy under established rules of interpretation requires it to be interpreted so as to provide coverage for theft even though an express exclusion, "6(a)," would omit coverage for conversion or secretion of the aircraft by one in possession under a lease, such as Allender and Boone. They argue in support of this contention that, first, Allender and Boone intended to steal their aircraft at the time the lease was executed, thereby rendering the lease null and void and, second, any ambiguity between a covered "theft" and an excluded "conversion" or "secretion" must be resolved in favor of coverage under established rules of policy interpretation.

Aside from the absence of any evidence to show Allender's and Boone's intent to steal, appellants' contention begs the preliminary question of what evidence they had that a theft had occurred. As the court in *Compass Ins.*

*Co.* v. *Palm Beach Lakes, etc., supra,* 399 So.2d at page 518, expressed it, "Here, at best, plaintiff proved that the whereabouts of the plane were unknown," which amounted to a failure to prove a risk within the coverage.

Therefore, under the circumstances presented here, we must conclude that appellants failed to produce any evidence that respondents' denial of coverage was unreasonable. There having been presented no other evidence of "bad faith" by the insurer respondents in denying appellants' claim, we have determined that summary judgment in respondents' favor was proper here.

### Denial of Leave to File Amended Complaint

■ In their last contention, appellants argue that the trial court abused its discretion when it denied them leave to file an amended complaint.

"C.C.P. 473 authorizes the trial court, in its 'discretion,' to allow amendments 'in furtherance of justice.' The policy of great liberality in permitting amendments at any stage of the proceeding was declared at an early date and has been repeatedly restated. [Citations.] . . . [¶] . . . [¶] ■ When an order granting or denying leave to amend is attacked *on appeal,* an additional policy enters into the reviewing court's determination: The discretion of the trial court should be upheld unless clearly abused. . . ." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1121, pp. 537-538.) "If the lower court denies leave to amend, the conflict of policies . . . is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling. [Citations.]" (*Id.,* at p. 540.) ■ However, "It is of course proper to deny leave when the proposed amendment or amended pleading is *insufficient to state a cause of action or defense.* [Citations.] [¶] Likewise, an amendment which *contradicts an admission in the original pleading* will ordinarily not be allowed unless a showing is made of mistake or other excuse for changing the allegations of fact. [Citations.] [¶] Similarly, denial of leave may be upheld where the amendment *contradicts a stipulation. . . .*" (*Id.,* at p. 541.)

In their proposed first amended complaint, appellants alleged, in addition to the four causes of action alleged in their original complaint, a fifth cause of action for negligence which incorporated almost all of the allegations of the first cause of action and added the following: "19. Defendants negligently failed to disclose to plaintiffs the facts alleged in paragraph 9 (A) herein and negligently sold, issued and delivered to plaintiffs the policy of insurance described herein."

Paragraph 9 of the proposed amended complaint, which was incorporated by reference into the new cause of action, alleged in subparagraph A.:

"Defendants at all material times and specifically on and before July 29, 1980, when they sold the policy to plaintiffs, on August 22, 1980, when they issued the policy to plaintiffs, in early September, 1980, when they delivered the policy to plaintiffs, on January 7, 1981, and thereafter, when they denied and continued to deny plaintiffs' claims for policy benefits, knew and had full knowledge of the following facts: [¶] A. That plaintiffs' aircraft was to be delivered to and used by one Bruce Allender, the purported lessee of the aircraft, and also named by defendants as an insured on plaintiffs' policy."

The remaining subparagraphs of paragraph 9 describe the suspicious facts linking Allender and Boone to an international drug smuggling ring which stole private aircraft for use in its smuggling operations as were previously recited.

In their opening brief, appellants explain their proximate cause theory in the proposed negligence cause of action as follows: "Had defendants not issued the binder or policy naming Allender as an insured, and told plaintiffs the reasons why, plaintiffs would never have delivered, and lost, their aircraft to a thief." However, earlier in their brief appellants recite facts from the record which contradict this theory: "*On August 1, 1980, Baja Cortez Airlines,* plaintiffs' lessee, *entered into the purported lease . . . with Allender, and delivered possession of the aircraft to him.* . . . [¶] Thereafter, *on August 5, 1980, defendants issued a policy insuring plaintiffs' aircraft* effective July 29, 1980 . . . . The named insureds were the same as on the binder, 'Paul and Dorothy Congleton (Lessor) and Bruce Allender (Lessee).' "

Thus, the evidence appellants presented in opposition to the summary judgment motion showed that they could not have relied on respondents' issuance of the policy to Allender as a named insured in deciding whether they would lease their aircraft to Baja Cortez which, in turn, would sublease it to Allender; Baja Cortez had already subleased the aircraft to Allender and delivered possession to Boone when respondents issued the policy. Appellants also could not reasonably have relied on the binder of temporary insurance because it was provided only by the local insurance agent, Tassio, and expressly advised that it was "a temporary Insurance Contract to serve as evidence of Insurance pending: Issuance and Delivery of a Policy," and was subject to cancellation by the insurer. Clearly, a binder signed by an agent of the insurer, though evidence of temporary insurance, cannot serve as evidence of the *insurability* of a named insured where the issuing company has not yet had any opportunity to conduct an investigation. By not waiting for issuance of the actual policy before leasing their aircraft to Baja Cortez and then subleasing and delivering possession to Allender and Boone, appellants demonstrated their intent to deal with Allender and Boone regardless of the results of any investigation or information provided by respondents.

Appellants further contend that the trial court should have allowed the amended pleading because it alleged respondents waived and/or were estopped to assert various policy defenses as a result of their previous knowledge concerning the alleged unlawful conduct of Allender and Boone. As our previous discussion reflects, we need not and therefore do not reach any of respondents' policy defenses in light of appellants' preliminary failure to show that their claim was within the policy coverage.

Accordingly, we conclude that the trial court did not abuse its discretion in denying appellants leave to file their proposed first amended complaint.

## DISPOSITION

The judgment and order are affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.