[No. B097261. Second Dist., Div. Four. Apr. 26, 1996.]

RAYMOND E. CAMPBELL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FARMERS INSURANCE COMPANY, INC., Real Party in Interest.

**COUNSEL**

Brown and Pearson and Chrissa N. Corday for Petitioner.

No appearance for Respondent.

Carter & Chuang and Chapin, Fleming & Winet, Jeffrey J. Leist and David A. Myers for Real Party in Interest.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

This mandamus proceeding raises an important question of law. Does California law recognize a cause of action by an insured against its insurer for breach of the implied covenant of good faith and fair dealing based solely on the insurer's unjustified failure to defend? The trial court resolved the matter in the negative by sustaining without leave to amend the insurer's demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing pled by the insured. We decide the matter in favor of the insured.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Standard of Review*

Because a demurrer challenges the legal sufficiency of the complaint, we must accept as true the complaint's well-pleaded material facts, but not its

contentions, deductions or conclusions of law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We consider neither the truth nor accuracy of the material factual allegations. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660].) Those are matters to be resolved after the case has moved beyond pleading litigation. With those principles in mind, we recite the pertinent facts.

## The Complaint

Raymond E. Campbell (Campbell) sued Farmers Insurance Group, Company, Inc. (Farmers) based upon Farmers's failure to provide a defense to Campbell under a comprehensive general liability insurance policy.[1] He alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The operative facts, common to all claims and taken from the pleading's allegations and the seven documents attached to the complaint and incorporated by reference, are the following.

Campbell, a general contractor, contracted with Bradley A. Jabour (Jabour) to build a residence for Jabour. On June 30, 1990, Campbell subcontracted with Gro-Mor Diversified, doing business as Acralight, to install skylights in the Jabour residence. Acralight was insured pursuant to a comprehensive general liability policy issued by Farmers.[2] On July 9, 1990, Farmers issued a certificate of insurance adding Campbell as an additional insured to Acralight's policy. The policy provided coverage of up to $1 million for the acts and omissions of the named insured and included a duty to defend any civil action for damages whether such action is groundless, false, or fraudulent.

On June 9, 1993, Jabour filed an action for damages against Campbell and Acralight for negligence. Jabour alleged that Acralight's negligence in the design, fabrication, and installation of skylights had allowed water to enter his residence, thereby causing extensive damage. Campbell was served with the complaint on June 9, 1993.

---

[1]The complaint alleged that Farmers does business under the names of Farmers Insurance Group of Companies and Truck Insurance Exchange. The exhibit attached to the complaint designating Campbell as an additional insured appears to have been issued by Truck Insurance Exchange. For purposes of clarity, we will refer to the insurer as Farmers.

[2]The Farmers-Acralight policy was not attached to the pleading. Farmers raised this omission in its demurrer but then later abandoned it as a basis of the demurrer. At the November 1995 hearing on the demurrer, Campbell's counsel stated: "We've never seen the policy. We never received anything other than [the certificate of insurance]. [¶] I've never seen the policy, Your Honor. I asked for it in April."

On June 11, 1993, Jabour wrote to Farmers. He explained the case arose from the construction of his home and that "[t]he house is riddled with construction defects and it leaks severely. . . . Campbell acted as the general contractor [and] Acralight was a subcontractor who designed and installed a skylight system in the house. The skylight system is one area of the house which allows significant water intrusion. The workmanship concerning the skylight system has been characterized as abominable by the architect of record." Jabour's letter attached the certificate of insurance naming Campbell as an additional insured on Acralight's policy. Jabour made a settlement demand of $350,000 as to Campbell and $75,000 as to Acralight.

On June 18, 1993, Campbell tendered the defense and indemnity of the Jabour lawsuit to Farmers.

On August 27, 1993, Farmers refused Campbell's demand for defense and indemnity. Farmers claimed that its policy only applied to liability arising out of actions of the named insured and that its "investigation reveals that [sic] was not negligent in designing, fabricating or installing the skylight at [Jabour's] house." Farmers claimed the defects resulted from the negligence of the architect and/or other subcontractors.

On September 17, 1993, Campbell responded: "As you know, the general contractor is legally liable to the homeowner for all negligence by its subcontractors. Thus, when the owner sues the general contractor alleging misconduct by the subcontractor, the general contractor is ultimately liable for the acts of the subcontractor. The general contractor has an action against the subcontractor to the extent the general contractor is held liable to the owner for negligent or defective work. [¶] The purpose of obtaining status as an additional named insured is to protect the general contractor where the homeowner sues the general contractor for the negligent work of the insured subcontractor. [¶] This is the precise case in the matter at bar. A lawsuit has been served on Raymond E. Campbell, Inc., and as one of the allegations claims negligent and defective work on the part of Gro-Mor Diversified, dba Acralight. Although it may be true that other subcontractors were also negligent, we are aware of no conclusive evidence which would exculpate Acralight from all negligent or defective work. [¶] We believe it is entirely inconsistent to allege that Acralight was not negligent in any way in the construction of the skylight, and yet Farmers Insurance Group has accepted the defense of Acralight in the action by the homeowner against the insured directly. [¶] If Farmers Insurance Group is handling the defense of Gro-Mor against the homeowner, they certainly have an obligation to defend the additional named insured, Raymond E. Campbell, Inc. as to the allegations

of negligence arising from the conduct of Acralight. [¶] If you doubt the culpability or negligence of Acralight, the appropriate method of preserving these rights would be to accept the tender of coverage with a reservation of right. However, you have not followed this procedure. . . ."

On September 28, 1993, Farmers responded that its "denial remains firm." "[Our] investigation has revealed that the leaks to Mr. Jabour's roof were not due to our insured's negligence. In fact any leaks that have occurred are due to another trade's negligence or defect."

Farmers, however, did accept Acralight's tender of defense, hired counsel to defend Acralight, and settled with Jabour for $20,000 on behalf of Acralight.

As a result of Farmers's refusal to defend him in Jabour's lawsuit, Campbell engaged counsel and eventually settled with Jabour for $50,000.[3] In so doing, Campbell incurred attorney fees and costs of $47,912.94.

All of the foregoing alleged facts were incorporated by reference into the second cause of action for breach of the implied covenant of good faith and fair dealing. Additionally, Campbell alleged that Farmers had a duty to act fairly and in good faith and to promptly investigate and to make reasonable coverage decisions on behalf of petitioner. Campbell alleged that Farmers breached its obligation to act fairly and in good faith in the following particulars: failing to properly investigate the Jabour lawsuit before refusing to defend and indemnify Campbell; denying Campbell a defense without proper cause and without regard to the provisions of the policy, relevant case law and the allegations in Jabour's lawsuit about Acralight's actions; accepting the defense of Acralight even though it refused Campbell's request for a defense with the explanation that Acralight had *not* been negligent; denying both Campbell's tender of defense and indemnity and Jabour's settlement demand with the intent to coerce Campbell to forego the benefits of the insurance policy; denying its policy obligations to Campbell by asserting that he is not an insured, that an additional insured is not entitled to the duty to defend and that Farmers is not obligated to indemnify Campbell for the sum he paid to settle Jabour's claim on the ground Acralight was not negligent; and that Farmers intended to coerce Campbell to forego the benefits of the insurance policy and based its coverage decision on its desire to reduce or avoid its obligation to Campbell. In addition to seeking recoupment of the sums expended in defending against and settling with Jabour, Campbell sought damages for emotional and mental distress as well as

---

[3]In a subsequent motion, Campbell claimed that the insurer who had issued him a general liability policy had been declared insolvent, forcing him to personally retain counsel.

economic loss (e.g., loss of business profits). Campbell also sought an award of punitive damages based on the allegations Farmers acted with conscious disregard of his rights and with the intent to vex, injure, or annoy him, so as to constitute oppression, fraud, or malice.

*The Demurrer*

In regard to Campbell's cause of action for breach of the implied covenant of good faith, Farmers's demurrer made the following substantive arguments. To the extent Campbell predicated his claim on Farmers's refusal to defend, Farmers contended that *as a matter of law* it could not be liable on that theory because "[a]n insurer cannot be found liable for breach of the implied covenant of good faith for refusing to defend, such liability arises only from a refusal to settle a claim likely to exceed the policy limits." And to the extent Campbell predicated his claim on Farmers's refusal to settle with Jabour, Farmers, pointing to the fact that Jabour's $350,000 settlement demand was less than the $1 million policy limit, urged: "Where the amount of all settlement demands was within the policy limits, and there was no potential that a judgment in excess of the policy limits would be entered, an insured cannot state a claim for breach of the implied covenant for failure to settle."

Essentially, Farmers claimed that *at most* Campbell could state a claim for breach of contract to recover reasonable attorney fees and settlement costs.

*The Trial Court's Ruling*

Insofar as is relevant to this proceeding, the trial court sustained without leave to amend Farmers' demurrer to Campbell's cause of action for breach of the implied covenant of good faith and fair dealing. Campbell's cause of action for breach of contract remains.[4]

*Proceedings in This Court*

Campbell filed a petition for a writ of mandate to challenge the ruling that his complaint was insufficient as a matter of law to state a cause of action for breach of the implied covenant of good faith and fair dealing.

 Even though the lawsuit is still in the pleading stage, review through a petition for extraordinary relief is appropriate. Where a demurrer is sustained without leave to amend with respect to less than all of the causes of action, "mandamus will lie when it appears that the trial court has

---

[4]As to the fraud claims, the court sustained Farmers' demurrer with leave to amend.

deprived a party of an opportunity to plead his cause of action . . . and when that extraordinary relief may prevent a needless and expensive trial and reversal [citation]." (*Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669].) Because the primary issue raised by the parties' pleadings, the trial court's ruling, and Campbell's petition is the novel and important question of whether an insured may sue its insurer for breach of the implied covenant of good faith and fair dealing based solely upon the insurer's unjustified refusal to defend, we stayed further proceedings in the trial court and issued an alternative writ of mandate to allow us to consider that specific question. (See, e.g., *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) The other issues raised by Farmers' demurrer, including the significance of the fact that Jabour's settlement demand was under the policy limits, are not germane here but are matters the trial court may consider in later proceedings. In other words, we would reach the same conslusion whether or not Jabour had made *any* settlement offer: the insurer's unjustified or unreasonable refusal to defend constitutes a breach of the implied covenant of good faith and fair dealing.

## DISCUSSION

 Farmers contends that case law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing when the insurer simply refuses to defend. Campbell, citing to other decisions, claims that precedent does recognize the viability of his legal theory. Close scrutiny of the cases cited by the parties reveals that none of the authorities is controlling precedent squarely addressing the specific issue here.

We begin with an examination of the cases relied upon by Farmers. The first is *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198] (hereafter *Comunale*). The insured, driving a truck, struck two pedestrians. After the pedestrians filed suit against the insured, the insurer declined to provide coverage, claiming the vehicle did not belong to the insured. The policy had a $20,000 limit. The insured retained counsel. The pedestrians offered to settle their claims for $4,000. The insured communicated this offer to the insurer, who declined involvement. A jury returned a verdict against the insured for $26,250.

On appeal, the issue was whether the insured had a cause of action against the insurer for the amount of judgment in excess of the policy limits. (*Comunale, supra,* 50 Cal.2d at p. 658.) After setting forth the principle that the implied covenant of good faith and fair dealing requires the insurer to settle in an appropriate case, the court wrote the following passage, which Farmers claims stands for the proposition that the mere refusal to defend cannot support a claim for breach of the implied covenant of good faith and fair dealing. "There is an important difference between the liability of an insurer who performs its obligations and that of an insurer who breaches its contract. The policy limits restrict only the amount the insurer may have to pay in the performance of the contract as compensation to a third person for

personal injuries caused by the insured; they do not restrict the damages recoverable by the insured for a breach of contract by the insurer. [¶] The decisive factor in fixing the extent of Traders' liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits. *Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs.* [Citation.] In such a case it is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend. [Citation.] This reasoning, however, does not apply where the insurer wrongfully refuses to accept a reasonable settlement within the policy limits." (*Comunale, supra,* 50 Cal.2d at pp. 659-660, italics added.)

We believe Farmers reads too much into the above analysis. While it is true that in *Comunale* the insurer had failed to defend, the gravamen of the insured's claim was that the insured had subsequently failed to accept a reasonable settlement offer, thereby exposing the insured to liability in excess of the policy limits. The issue was whether the insured could recover that excess amount. The *Comunale* court recognized this when it wrote: "The decisive factor in fixing the extent of [the insurer's] liability is not the refusal to defend, it is the refusal to accept an offer of settlement within the policy limits." (*Comunale, supra,* 50 Cal.2d at p. 659.) The court had no need to consider whether a wrongful refusal could, by itself, support an action for breach of the implied covenant because those were not the facts presented. It is well settled that " ' "[t]he language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873].) Furthermore, our analysis that *Comunale* does not stand for the principle espoused by Farmers is supported by the manner in which the *Comunale* court phrased its conclusion. It wrote: "It follows from what we have said that an insurer, who wrongfully declines to defend and who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits." (*Comunale, supra,* 50 Cal.2d at p. 661.)

Contrary to Farmers' claim, nothing in the Supreme Court's reliance upon *Comunale* in subsequent cases supports the conclusion that the court construed *Comunale* as holding that refusal to defend cannot, as a matter of law, result in breach of the implied covenant of good faith. All of the cases are distinguishable because in each, the insurer refused to settle a claim against the insured. (See, e.g., *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425,

429-430 and 432-434 [58 Cal.Rptr. 13, 426 P.2d 173]; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14-15 [123 Cal.Rptr. 288, 538 P.2d 744]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940 [132 Cal.Rptr. 424, 553 P.2d 584]; *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237 [178 Cal.Rptr. 343, 636 P.2d 32].) The same distinction applies to the Court of Appeal decision relied upon by Farmers, *Camelot by the Bay Condominium Owners' Assn.* v. *Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33 [32 Cal.Rptr.2d 354] (insurer had defended insured but rejected reasonable settlement offers). Consequently, insofar as this case is concerned, *Comunale* and its progeny merely stand for the proposition that if an insurer rejects a reasonable settlement offer within policy limits, it may become obligated to pay more than its policy limits.[5]

Farmers next relies upon *San Jose Prod. Credit* v. *Old Republic Life Ins.* (9th Cir. 1984) 723 F.2d 700. In a diversity action applying California law, the appellate court summarily concluded that the district court had erred when it had found that an insurer's refusal to accept a defense breached the implied covenant of good faith and fair dealing. Citing all of the California Supreme Court cases we have just discussed, the court merely wrote: "California courts have consistently treated an insurer's refusal to defend as a breach of contract rather than a breach of the implied covenant. [Citations.] Thus, [the insurer's] refusal to defend, without more, amounted only to a breach of contract, not a breach of the implied covenant." (*Id.* at pp. 703-704.) Farmers' reliance upon this passage is unpersuasive for two reasons. ■ The first is that federal opinions are not controlling authority in interpreting state law. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 781, pp. 751-753.) The second, and more important, is that based upon our earlier analysis, we believe the opinion misconstrues the precedential value of the very cases it relies upon to support its conclusion.[6]

---

[5]Farmers claims that its interpretation of *Comunale* was reaffirmed in *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297]. Not so. An issue in *Isaacson* was defining the scope of "CIGA's" *statutory* duties. To do so, the court first briefly reviewed the contractual duties of an insurer. It wrote: "Wrongful failure to provide coverage or defend a claim is a breach of contract. [Citations.] Accordingly, if an insurer 'erroneously denies coverage and/or improperly refuses to defend the insured' in violation of its contractual duties, 'the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement.'" (*Id.* at p. 791.) Given the context of these statements, we cannot and do not construe this as a holding that failure to defend cannot give rise to an action for breach of the implied covenant. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

[6]The opinion also cited *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 280 [54 Cal.Rptr. 104, 419 P.2d 168]. The issue in *Gray* was whether the language of the particular policy created a duty to defend. At no point did *Gray* address the issue of whether a refusal to defend breaches the implied covenant of good faith and fair dealing.

Interestingly, Farmers and Campbell both cite *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1 [221 Cal.Rptr. 171], an appeal from a judgment entered following a lengthy jury trial, to support their respective positions. Each points to different passages in the opinion. There is no need for us either to dissect these various statements or to parse the 56-page majority opinion in that appeal. At this juncture, we merely set forth the following comment from the dissent because it amply explains why the majority opinion is of little value in resolving this case. "This case began as a dispute over the appropriate scope of the tort of bad faith, the majority arguing this was not an evidence case and a 'mere' refusal to defend could never be tortious. [¶] The majority now grudgingly concedes that there may exist a creature known as a bad faith refusal to defend. The majority then promptly consigns this creature to the River Styx for transportation. [¶] I begin my analysis by noting that the majority's Star Chamber treatment of the evidence avoids a clear-cut treatment of when, if at all, a tortious bad faith refusal to defend exists." (*Id.* at p. 78 (dis. opn. of Rickles, J.).)

Campbell relies heavily upon *Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, to support its contention that an insurer's refusal to defend can support a claim by the insured for breach of the implied covenant of good faith and fair dealing. The matter was a diversity action, requiring application of California law. Following a jury trial, the insured prevailed on his claim that the insurer's refusal to defend resulted in a breach of the covenant of good faith and fair dealing. The insured was awarded compensatory and punitive damages. To determine if the trial court properly allowed the jury to assess punitive damages, the appellate court had to decide if a failure to defend can result in a breach of the implied covenant. The court first acknowledged the statement in *San Jose Prod. Credit* v. *Old Republic Life Ins.*, *supra*, 723 F.2d at pages 703-704 that a refusal to defend, without more, does not constitute a breach of the implied covenant. But then relying upon case law from New York and North Dakota, it found that "a bad faith refusal to defend may constitute a breach of the implied covenant." (*Tibbs*, *supra*, at p. 1375.) Not surprisingly, Farmers attacks *Tibbs* on several grounds—that it overlooked controlling and contradictory California precedent;[7] that it misinterpreted the out-of-state authorities; and that it was distinguishable because of "the particularly egregious facts presented" as to how and why the insurer refused to defend. These arguments need not detain us. As we have already noted, federal opinions, including *Tibbs*, do not constitute binding interpretations of state law. The main point is that because no California decision has squarely addressed the question of whether the

---

[7] On this point, Farmers is referring to *Comunale* and its progeny.

refusal to defend can support a claim for breach of the implied covenant, we are writing upon a clean slate in resolving the issue. ■■■ As we shall now explain, sound policy considerations as well as precedent in other areas of insurance law support the conclusion that the cause of action does lie.

■■■ An insurance policy is a contract and therefore creates contractual duties owed by the insurer to the insured, e.g., to defend, to indemnify, to pay policy benefits to the insured, etc. Those contractual obligations, however, are only the starting point for analyzing the potential liability of the insurer because every insurance policy contains an implied covenant of good faith and fair dealing that neither party will do anything to injure the other party's right to receive the benefits of the agreement. (*Comunale, supra,* 50 Cal.2d at p. 658.) Thus, if an insurer fails to act fairly and in good faith in its discharging its contractual obligations, it can be liable in tort for breach of the implied covenant. An insurer fails to deal fairly and in good faith if it acts without proper cause in making its decision. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-574 [108 Cal.Rptr. 480, 510 P.2d 1032].) In determining whether the insurer's action has breached the implied covenant, the significance to the insured of the duty breached is considered. (See *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 940-941 [122 Cal.Rptr. 470].) ■■■ In this case, the duty allegedly breached was the duty to defend. How significant is that duty? Recent decisions from our Supreme Court leave no doubt on that point. "An insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought." (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1086 [17 Cal.Rptr.2d 210, 846 P.2d 792], original italics.) "The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. [Citations.]" (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Thus, it is undeniable that insurance is purchased to provide the peace of mind and security that comes from knowing that if the insured contingency arises, the insurer will defend against the claim. Stated another way, one of the primary benefits of an insurance policy is that the insured can expect the insurer to defend against third party claims. It therefore follows that if an insurer *unreasonably* fails to defend, it has breached the implied covenant of good faith and fair dealing.

An anomalous situation would be created if, on the one hand, an insured can sue for the tort of breach of the implied covenant if the insurer accepts

the defense and later refuses a reasonable settlement offer, but, on the other hand, an insured is denied tort recovery if the insurer simply refuses to defend. In the former situation, the insurer could be found liable for emotional distress damages and punitive damages (see, e.g., *Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d 425 [emotional distress damages] and *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980] [punitive damages]), but in the latter situation, the insurer's liability would be limited to attorney fees and settlement costs expended by the insured. This dichotomy could have the effect of encouraging an insurer to stonewall the insured at the outset by simply refusing to defend because if it were later to be successfully sued by the insured because of that refusal, it (the insurer) would be in no worse position financially than if it had accepted the case, defended, and then settled. That is, an insurer considering the option of breaching an implied covenant would have a strong financial incentive to do so at the very outset by refusing to defend rather than risk the more expansive liability applicable to a breach of the implied covenant arising out of a later performance of its duties. In order to prevent that situation, the Supreme Court of North Dakota, in *Smith* v. *American Family Mut. Ins. Co.* (N.D. 1980) 294 N.W.2d 751 [20 A.L.R.4th 1], adopted the rule that a refusal to defend can give rise to tort liability.[8] (See also Annot., Failure to Defend Insured (1983) 20 A.L.R.4th 23.) We do likewise given the significance of the duty to defend in California law.

An additional policy consideration militates against adopting Farmers' position. Limiting an insured to contract damages for breach of the duty to defend would result in inequitable treatment of insureds based upon their financial status. If the insured were financially capable of providing its own defense with minimal collateral damage, contract damages may well be adequate compensation for the money spent on attorney fees and settlement costs. But what of the insured who must use scarce assets or is forced to turn to a lender? Recoupment of expenses incurred would not make whole the insured who was required to sacrifice in order to finance a defense. And lastly, there is the insured who is financially incapable of mounting its own defense. Assuming that insured is able ultimately to successfully sue the insurer, contract damages would not even begin to compensate for the financial and emotional losses sustained prior to obtaining such a judgment. "Only a rule that recognizes the potentially tortious nature of a bad faith refusal to defend can assure that all insureds, rich and poor alike, will have the opportunity to recover all of their losses." (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.*, *supra*, 175 Cal.App.3d at p. 84 (dis. opn. of Rickles, J.).)

---

[8]That decision was one of the cases the federal appellate court relied upon in *Tibbs* v. *Great American Ins. Co.*, *supra*, 755 F.2d 1370.

Furthermore, we find no merit to Farmers' argument that because Campbell never faced exposure beyond the $1 million policy limits given Jabour's $350,000 settlement demand, Campbell can be adequately compensated through recovery of contract damages (attorney fees and settlement costs). Farmers' request to not recognize a claim for breach of the implied covenant on this basis fails to acknowledge the big picture and ignores many pragmatic concerns. "The insured has contracted precisely to avoid the substantial economic and emotional burden of assuming and controlling the litigation at the outset. [A failure to recognize the claim for breach of the implied covenant] ignores the fact that the economic costs of defending a lawsuit could throw a business operating on a narrow profit margin into bankruptcy. It ignores the internal dissension and causal finger-pointing such litigation [can cause] a small business. It ignores the fears of financial drain generated by the mere *prospect* of extended litigation. It ignores the substantial emotional distress occasioned by the personal responsibility for providing one's own legal defense. It ignores those less fortunate insureds who may not be able to afford their own attorney over the course of an extended lawsuit." (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.*, *supra*, 175 Cal.App.3d at p. 85 (dis. opn. by Rickles, J.), original italics.)

Recognition that a refusal to defend *can* result in liability for breach of the implied covenant does not result in a situation in which an insurer must defend all claims at the risk of incurring expansive liability. For one, breach of the implied covenant requires unreasonable conduct or an action taken without proper cause. (See, e.g., *Congleton* v. *National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 59 [234 Cal.Rptr. 218] [bad faith implies unfair dealing, not mistaken judgment].) If the insurer's refusal to defend is reasonable, no liability will result. Furthermore, as we pointed out in *Amato* v. *Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1792 [23 Cal.Rptr.2d 73], and cases cited therein, there are a number of ways in which the insurer can protect itself when faced with a demand for a defense. It can defend with a reservation of rights. It can decline the request for defense but promise to reimburse the insured if, after further investigation, it determines a defense is owed. Or it can file a declaratory relief action seeking a judicial determination of its duty to defend.

## CONCLUSION

Having determined that an insured can sue for breach of the implied covenant based upon a refusal to defend, we address the proper disposition of this matter. Farmers' position, both in the trial court and on this appeal, has been that as a matter of law a cause of action for breach of the implied covenant of good faith and fair dealing does not lie based upon a refusal to

defend. Consequently, Farmers had no occasion to contest the sufficiency of Campbell's allegations assuming such a theory were viable. As such, any analysis on our part about the sufficiency of Campbell's pleading would be nothing more than an advisory opinion. We decline to engage in an academic exercise. The most expeditious and fairest course of action is to direct the trial court to set aside its order sustaining the demurrer, to enter an order overruling the demurrer, and to permit the parties to continue pleading litigation if they are so disposed.[9]

In a similar vein, we decline to address Farmers' argument that to the extent that Campbell's claim for breach of the implied covenant is based upon Farmers' refusal to accept Jabour's offer to settle, the claim fails because Jabour's offer was substantially under the policy limits. The primary basis of Campbell's claim of breach of the implied covenant is Farmers' refusal to defend. We entertained Campbell's petition solely to resolve the issues raised by that allegation. This secondary aspect of Campbell's claim can be litigated in the trial court.

## DISPOSITION

The alternative writ, having served its purpose is discharged. The order staying further proceedings in the trial court is lifted. Let a peremptory writ of mandate issue compelling respondent court to set aside its November 2, 1995, order sustaining without leave to amend Farmers' demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing pled in Campbell's complaint, to enter a new and different order overruling that demurrer, and to proceed consistent with the views expressed herein.

Epstein, J., and Hastings, J., concurred.

On May 20, 1996, the opinion was modified to read as printed above.

---

[9]This would allow Campbell the opportunity to amend to include new factual allegations based upon material he discovered after the trial court sustained Farmers' demurrer. Campbell has attempted to bring some of that evidentiary matter to our attention. That attempt is, of course, improper because our review is limited to the pleadings before the trial court at the time it sustained the demurrer. (See, e.g., *DeYoung* v. *Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 862-863 [206 Cal.Rptr. 28].)