219 F.3d 895 (9th Cir. 2000)
 PERSHING PARK VILLAS HOMEOWNERS ASSOCIATION, an unincorporated and non-profit Homeowners Association; CSP-PERSHING, LTD., a California Limited Partnership; HARRY BIGHAM; TIMOTHY PENKALA; and JOSEPH JOHN, Plaintiffs-Appellees,
v.
UNITED PACIFIC INSURANCE COMPANY, a Washington corporation; and RELIANCE INSURANCE CO., Defendants-Appellants.
 No. 98-56261
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 10, 2000--Pasadena, California
Filed July 10, 2000
Amended August 11, 2000
 [Copyrighted Material Omitted]
 Barry R. Levy, Horvitz & Levy, Encino, California, for the defendants-appellants.
 Dennis P. Riordan, San Francisco, California, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of California, Edward J. Schwartz, District Judge, Presiding; D.C. No. CV-95-01918-S
 Before: Robert Boochever, Michael Daly Hawkins, and Sidney R. Thomas, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Reliance Insurance Company appeals a judgment entered on a multimillion-dollar jury verdict. The jury found that Reliance acted in bad faith when it withdrew its defense of insured real estate developers in a construction-defect suit brought by a homeowners' association, and refused to pay the resulting default judgment. We reverse the judgment inasmuch as it permitted the homeowners to recover directly from the insurer without establishing that their claim was covered under the policy. We also reverse the judgment inasmuch as it did not award the amount of the default judgment to the insured developers as damages for Reliance's bad-faith failure to defend. We affirm the judgment in all other respects.
 
 
 2
 * The Pershing Park Villas Homeowners Association brought suit against real estate developers Harry Bigham, Timothy Penkala, and Joseph John, alleging defects and property damage in the construction of a twelve-unit condominium. The developers tendered the defense of the suit to their property damage insurer, United Pacific Insurance Company. United Pacific's parent, Reliance Insurance Company, assumed the defense under a reservation of rights. Approximately four months before trial, Reliance withdrew its defense on the ground that the damage in question was not covered under the policy. Though Reliance had obtained a legal opinion from outside counsel to this effect, it did not obtain a declaration of noncoverage from the court.
 
 
 3
 The developers did not retain new counsel to defend the suit, and the homeowners obtained a default judgment against them for $339,000. Reliance refused to pay the judgment. Faced with the unsatisfied judgment and other debts, the developers petitioned for bankruptcy protection. The developers did not list any unliquidated bad faith claims against Reliance among the assets disclosed in their bankruptcy schedules. Though it appears that at least one of the developers may have referred to claims against an insurance company in later correspondence with his bankruptcy trustee, the developers' trustees never expressly abandoned any pre-bankruptcy claims against Reliance.
 
 
 4
 Nevertheless, the developers, joined by the homeowners, brought this suit against Reliance for breach of contract, bad faith, and a variety of other torts arising out of Reliance's failure to defend or indemnify the developers.[1] The developers sought the amount of the default judgment, plus consequential damages for emotional distress and for loss of prospective economic advantage. Specifically, the developers claimed that the default judgment had pushed them into bankruptcy, and that as a result they had been unable to obtain credit to participate in the lucrative San Diego repossessed real estate market of the mid 1990s. Concomitant to this financial distress, they claimed to have endured severe depression and anxiety.
 
 
 5
 The homeowners sought to recover the amount of the default judgment directly from Reliance, contending that they were third-party beneficiaries of the policy under California Insurance Code S 11580(b).
 
 
 6
 Prior to trial, the district court granted the plaintiffs' motion for partial summary judgment against Reliance for breach of its duty to defend the developers. But the court continued the motion on the issue of Reliance's liability for the entire judgment, allowing Reliance to conduct additional discovery. The plaintiffs later renewed their motion for partial summary judgment, citing internal Reliance documents showing that Reliance knew there was a potential for coverage at the time it withdrew the defense, and cases holding that an insurer is liable for a judgment even on a noncovered claim when it fails to defend in bad faith.
 
 
 7
 The district court granted the motion for summary judgment and found that Reliance was liable for the entire default judgment as a consequence of its failure to defend the developers. Reliance moved for reconsideration on the ground that the district court had not found that the withdrawal of the defense was tortious. The district court denied the motion, and found that the withdrawal of the defense was wrongful as a matter of law.
 
 
 8
 On the eve of trial, Reliance submitted a motion styled "Defendants' Motion In Limine No. 1 For Order Requiring Foundation That Plaintiffs Have Standing." The motion contended that the developers lacked standing to bring claims arising outof the construction-defect litigation because those claims accrued before the developers filed for bankruptcy, were not disclosed to or abandoned by the trustee, and therefore remained property of the developers' respective bankruptcy estates. The district court denied the motion on the ground that the developers had a sufficient stake in the suit to present a justiciable case or controversy, and that Reliance had in all other respects waived the issue.
 
 
 9
 Notwithstanding its finding that Reliance acted in bad faith as a matter of law, the district court submitted to the jury the issue of whether Reliance's conduct breached the covenant of good faith and fair dealing. After a lengthy trial and brief deliberations, the jury found that Reliance had breached a duty of good faith and fair dealing as to both the developers and the homeowners, and awarded damages totaling $27 million. On Reliance's motion for a new trial, the plaintiffs agreed to remit all but approximately $5 million of the jury's award.
 
 
 10
 Under the reduced award, the homeowners received $175,000 for breach of the covenant of good faith and fair dealing, in addition to the amount of the default judgment that had been awarded to them in the construction-defect suit. The developers received $1,400,000 each for economic losses caused by Reliance's bad faith and negligence, and $200,000 each for emotional distress. Unsatisfied with the remittitur, Reliance appeals on numerous grounds.
 
 II
 
 11
 As a threshold issue, Reliance renews its challenge to the developers' standing to bring claims arising out of Reliance's failure to defend them in the construction-defect suit. Reliance grounds its objection to the developers' standing on the rule that the bankruptcy estate retains title to prebankruptcy causes of action not disclosed to or abandoned by the bankruptcy trustee. See Stein v. United Artists Corp., 691 F.2d 885, 893 (9th Cir. 1982).
 
 
 12
 * At the most general level, "[the standing] inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. " Warth v. Seldin, 422 U.S. 490, 498 (1975). Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete "case" or "controversy" to which the federal judicial power may extend under Article III, S 2. See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996); Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).
 
 
 13
 Beyond this constitutional core,"the prudential doctrine of standing has come to encompass `several judicially selfimposed limits on the exercise of federal jurisdiction.' " Brown Group, 517 U.S. at 551 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Principles of prudential standing are not "ordained by the Constitution, but constitute rather `rule(s) of practice,' albeit weighty ones; hence some exceptions to them where there are weighty countervailing policies have been and are recognized." United States v. Raines, 362 U.S. 17, 22 (1960) (alteration in original) (citation omitted) (quoting Barrows v. Jackson, 346 U.S. 249, 257 (1953)).
 
 
 14
 Because issues of constitutional standing are jurisdictional, they must be addressed whenever raised. See Ripplinger v. Collins, 868 F.2d 1043, 1046-47 (9th Cir. 1989) (citing Bender v. Williamsport Area Sch. Dist. , 475 U.S. 534, 541-42 (1986)). By contrast, a party waives objections to nonconstitutional standing not properly raised before the district court. See SycuanBand of Mission Indians v. Roache, 54 F.3d 535, 538 (9th Cir. 1995) (as amended).
 
 
 15
 The district court separately addressed what it deemed to be the jurisdictional and nonjurisdictional dimensions of Reliance's eleventh-hour challenge to the developers' standing. After noting Reliance's failure to designate standing as an issue for trial in the pretrial order, the district court ruled:
 
 
 16
 I think the question [ ] posed by an issue of standing is whether a party has a substantial [stake in a] controversy to make a justiciable matter. I think it is clear that the three individual plaintiffs do have a significant stake in the controversy.
 
 
 17
 The issue [respecting title to the claim] may be one of the capacity to sue rather than standing . . . . And I think under all the circumstances that have been adduced in this trial, the objections by the defendants to Bigham, Penkala and John proceeding with this litigation [have] been waived.
 
 
 18
 [EOR 1397] We review de novo whether the developers had a sufficient stake in their claims against Reliance to establish standing under the "case or controversy" requirement of Article III. See American-Arab Anti-Discrimination Comm. v. Thornburgh, 970 F.2d 501, 506 (9th Cir. 1992) (as amended); LaDuke v. Nelson, 762 F.2d 1318, 1322 (9th Cir. 1985). We review for a clear abuse of discretion the district court's ruling excluding nonjurisdictional standing issues as untimely under the pretrial order. See Acorn v. City of Phoenix , 798 F.2d 1260, 1272 (9th Cir. 1986).
 
 B
 
 19
 The district court was entitled to conclude that the time and manner in which Reliance raised the issue of standing was strategic. We cannot say that the district court clearly erred in excluding any nonjurisdictional issues of standing not designated for trial in the pretrial order. We will reverse the district court's finding that Reliance waived the issue of the developers' standing only if it is a jurisdictional rule that denies a debtor standing to pursue claims that are property of the bankruptcy estate.
 
 
 20
 The "irreducible constitutional minimum of standing" requires a plaintiff to show injury in fact, causation of that injury by the defendant's conduct, and redressability of the injury by the requested relief. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (quotations omitted). The jury found that Reliance's withdrawal of the developers' defense in the construction-defect suit resulted in entry of a default judgment that pushed the developers into bankruptcy, which precluded them from later participating in profitable business opportunities and inflicted mental suffering. There can be no question that these injuries are concrete, traceable to Reliance's conduct, and remediable by money damages. Nor can there be any question that these injuries were literally "suffered by" the developers, see id., though the right to sue on them may have passed to their bankruptcy estates by operation of the bankruptcy laws.
 
 
 21
 Reliance claims that lack of title to their claims deprives the developers of constitutional standing to sue. Yet we have specifically distinguished between constitutional standing and "third-party" standing to bring a claim to which another holds title. In DCD Programs, Ltd. v. Leighton, 90 F.3d 1442 (9th Cir. 1996), several investment partnerships brought claims for disallowed tax benefits. We noted that the individual partners, and not the partnerships, may have been the correct parties to bring those claims, because it was the partners who "actually pay taxes and might arguably have been `damaged' as a result of the disallowance . . . ." Id. at 1445 n.6. But we also noted that the defendant had not "directly challenged the partnerships' standing to seek recovery of these alleged damages on behalf of thepartners." Id. Finding any nonjurisdictional challenges to the partnerships' standing waived, we held only that "the constitutional standing requirements" were met, and proceeded to the merits of the case without further inquiry. Id.[2]
 
 
 22
 Here, too, we find that the elements of constitutional standing are present notwithstanding the possibility that the developers' claims against Reliance may remain property of their bankruptcy estates.[3] The district court did not abuse its discretion in determining that Reliance waived any objections to the developers' third-party standing to assert those claims when Reliance failed to designate the issue for trial in the pretrial order.
 
 III
 
 23
 The developers' constitutional standing established, we turn to Reliance's liability for its withdrawal of their defense. Reliance argues that the district court erred in holding that Reliance's bad faith rendered it automatically liable without any showing that the default judgment in the constructiondefect suit would not have been entered but for Reliance's wrongful conduct.
 
 
 24
 * The general rule is long-settled in California that "an insurer that wrongfully refuses to defend is liable on the judgment against the insured." Gray v. Zurich Ins. Co., 419 P.2d 168, 179 (Cal. 1966); see Samson v. Transamerica Ins. Co., 636 P.2d 32, 42 (Cal. 1981); Midiman v. Farmers Ins. Exch., 90 Cal. Rptr. 2d 85, 91 (Ct. App. 1999); Amato v. Mercury Cas. Co., 61 Cal. Rptr. 2d 909, 914 (Ct. App. 1997). The duty to defend is broader than the duty to indemnify, and extends to claims that are merely potentially covered. Montrose Chem. Corp. v. Superior Ct., 861 P.2d 1153, 1157 (Cal. 1993). Where the wrongful refusal to defend is also unreasonable, it violates the covenant of good faith and fair dealing, and the insurer will be liable for consequential damages regardless of foreseeability. Amato, 61 Cal. Rptr. 2d at 915; Campbell v. Superior Ct., 52 Cal. Rptr. 2d 385, 392-93 (Ct. App. 1996).
 
 
 25
 It is no defense that the ultimate judgment against the insured is not necessarily rendered on a theory within the coverage of the policy. See Gray, 419 P.2d at 179; Amato, 61 Cal. Rptr. 2d at 914[4]. Nor must the insuredprove that the judgment would have been smaller, or would not have occurred, but for the insurer's wrongful failure to defend: "Such a theory . . . would impose upon the insured the impossible burden of proving the extent of the loss caused by the insurer's breach." Gray, 419 P.2d at 179 (quotations omitted).
 
 
 26
 The Gray rule of automatic liability applies equally to judgments entered by default. "When the insurer refuses to defend and the insured does not employ counsel and presents no defense, it can be said the ensuing default judgment is proximately caused by the insurer's breach of the duty to defend." Amato, 61 Cal. Rptr. 2d at 915.
 
 
 27
 Reliance argues that Amato was wrongly decided on this point, and that the California Supreme Court would instead apply the rule in Travelers Ins. Co. v. Lesher , 231 Cal. Rptr. 791 (Ct. App. 1986). In Lesher, the plaintiff contended that he would have prevailed at trial but for the failure of his insurer to conduct his defense with due care. Analogizing the claim to one for professional malpractice, the court required the plaintiff to prove the extent to which the judgment resulted from the insurer's negligent defense, and not from the underlying merits of the case. See id. at 805.
 
 
 28
 The rule in Lesher derives from the prima facie element of professional negligence that requires a plaintiff to prove the extent of "actual loss or damage resulting from the professional's negligence." Mattco Forge, Inc. v. Arthur Young & Co., 60 Cal. Rptr. 2d 780, 788 (Ct. App. 1997). The tort of bad faith is not predicated on negligence, and for this reason subsequent courts of appeal have held the Lesher "trialwithin-a-trial" rule inapplicable where the judgment against the insured has resulted not "upon negligent malpractice of a defense actually undertaken," but on the bad faith failure to provide any defense at all. Amato, 61 Cal. Rptr. 2d at 917; see MacGregor Yacht Corp. v. State Comp. Ins. Fund, 74 Cal. Rptr. 2d 473, 479 (Ct. App. 1998), rev. denied.
 
 
 29
 The distinction is a reasonable one. The insured is relieved of proving the extent of damages in a bad faith action in order to remove the insurer's incentive to strategically disavow responsibility for the insured's defense "with everything to gain and nothing to lose." Gray, 419 P.2d at 179 (quotations omitted). By contrast, an insurer that actually undertakes a defense has no similarly powerful strategic incentive to conduct the defense negligently.
 
 
 30
 Reliance does not dispute the jury's well-supported conclusion that it breached the covenant of good faith and fair dealing when it wrongfully withdrew the developers' defense. Reliance is therefore liable to the developers for the amount of the judgment, and all other damages consequential to it.
 
 B
 
 31
 Reliance is correct that its bad faith refusal to defend the developers does not automatically entitle the homeowners to recover the default judgment from Reliance. The developers were named as insureds; the homeowners were not. A claimant's direct action against an insurer "depends on the contract terms of the coverage provisions of insurance policy," and unlike the insured's bad faith claim, may not be maintained irrespective of the scope of coverage. Amato, 61 Cal. Rptr. 2d at 918; see Cal. Ins. CodeS 11580 ("[W]henever judgment is secured against the insured, . . . an action may be brought against the insurer on the policy and subjectto its terms and limitations, by such judgment creditor to recover on the judgment.").
 
 
 32
 Although the homeowners were not named as insureds, the district court here permitted the jury to award them damages without determining coverage on a finding that Reliance breached an implied covenant of good faith. But it is unclear how such a covenant would arise between Reliance and the homeowners. "Generally--by definition--the implied covenant runs in favor of the other contracting party, and hence it is generally perceived as axiomatic that a`third party claimant' may not bring an action for breach of the covenant or its duties." Hand v. Farmers Ins. Exch. , 29 Cal. Rptr. 2d 258, 264 (Ct. App. 1994); see Moradi-Shalal v. Fireman's Fund Ins. Cos., 758 P.2d 58, 59-68 (Cal. 1988). The district court erred in awarding damages to the homeowners for Reliance's breach of a covenant of good faith that did not exist.
 
 
 33
 The district court should, however, have awarded the amount of the default judgment to the developers as damages for Reliance's breach of its duty to defend them. See Gray, 419 P.2d at 179; Amato, 61 Cal. Rptr. 2d at 917.
 
 
 34
 Reliance challenges the jury's award of damages to compensate the developers for emotional distress. Reliance argues that California law, which governs this diversity action, permits the developers to recover only for emotional distress that was severe, substantial, and enduring. Reliance also challenges the size of the emotional distress awards.
 
 IV
 
 35
 * Though emotional distress must be severe to be actionable by itself, no heightened showing is required to obtain damages for mental suffering that naturally ensues from the commission of a distinct and independent tort. See Gruenberg v. Aetna Ins. Co., 510 P.2d 1032, 1041-42 (Cal. 1973). The requirement of severity is designed to address " `the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability' " when no injury other than emotional distress is alleged. Id. (quoting Restatement (Second) of Torts S 46 cmt. b (1965)). These concerns are mitigated when "substantial damages for loss of property" corroborate the plaintiff's mental suffering. A plaintiff may therefore recover damages for nonsevere emotional distress ensuing from tortious conduct that also results in significant economic loss. Id. at 1041-42.
 
 
 36
 Nevertheless, in Gilchrest v. Jim Slemons Imports, Inc., 803 F.2d 1488 (9th Cir. 1986), we overturned an award of damages for mild emotional distress that arose out of an independently actionable tort on the ground that California only allowed recovery for " `severe, i.e., substantial or enduring' " distress. Id. at 1499 (quoting Young v. Bank of America, 190 Cal. Rptr. 122, 126 (Ct. App. 1983)). Though we did not cite or discuss Gruenberg in Gilchrest, a panel of this court is ordinarily bound to follow previous Ninth Circuit interpretations of state law. See Jones-Hamilton Co. v. Beazer Materials & Servs., Inc., 973 F.2d 688, 695 n.4 (9th Cir. 1992). We are only so bound, however, "in the absence of any subsequent indication from the [state] courts that[the previous] interpretation was incorrect." Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983); see Jones-Hamilton , 973 F.2d at 695 n.4. California decisions since Gilchrest affirm Gruenberg's vitality.
 
 
 37
 The California Supreme Court reiterated its Gruenberg holding in Gourley v. State Farm Mutual Automobile Insurance Co., 822 P.2d 374 (Cal. 1991). In the course of drawing distinctions between the types of damages available in bad-faith and personal-injury suits, the court noted:We observed [in Gruenberg] that damages for emotional distress are compensable as incidental damages flowing from the initial breach, not as a separate cause of action: "[Because] we are concerned with mental distress resulting from a substantial invasion of property interests of the insured and not with the independent tort of intentional infliction of emotional distress, we deem [the requirements of outrageous conduct and severe emotional distress ] to be inapplicable." Thus, once the threshold requirement of economic loss is met, the insured need not show additional loss or injury to recover damages for his mental distress as long as such damages were proximately caused by his insurer's breach of the implied covenant.
 
 
 38
 Id. at 378 (citation omitted) (quotation altered in original) (quoting Gruenberg, 510 P.2d at 1032). The California Supreme Court also recently cited Gruenberg in Cates Construction, Inc. v. Talbot Partners, 980 P.2d 407, 416 (Cal. 1999), for the proposition that "[i]n the insurance policy setting, an insured may recover damages not otherwise available in a contract action, such as emotional distress damages resulting from the insurer's bad faith conduct."
 
 
 39
 The California Supreme Court recently denied review in a case where the application of the Gruenberg rule was decisive. In Clayton v. United Services Automobile Association, 63 Cal. Rptr. 2d 419 (Ct. App. 1997), rev. denied, an insured was awarded damages for economic loss and for emotional distress caused by his insurer's bad faith denial of a claim. The insurer argued "that the jury should have been instructed that, in order to be compensable the emotional distress suffered must have been severe, substantial or enduring. . . ." Id. at 421 (quotations omitted). Citing Gruenberg , the court rejoined "our Supreme Court has rejected any such a requirement." Id.
 
 
 40
 California authority subsequent to Gilchrest clearly holds that a plaintiff may recover damages for all emotional distress incident to an insurer's bad faith denial of coverage, so long as the insurer's conduct also resulted in substantial financial loss. There was evidence that the developers suffered substantial financial loss, and they are therefore entitled to recover for the variety of emotional symptoms, including major depression, that resulted from their bankruptcies.
 
 B
 
 41
 Reliance argues that the emotional distress awards are excessive in amount under Merlo v. Standard Life & Accident Insurance Co., 130 Cal. Rptr. 416 (Ct. App. 1976). In Merlo, a California appeals court found an award of $250,000 for mental anguish excessive in proportion to the plaintiff's financial injury of $7,500. Id. at 423-24. Merlo's rule of proportionality does not come into play here, where damages for emotional distress amount to a small fraction of the damages awarded for financial injury. Reliance appears to argue that the developers here should receive substantially less in absolute compensation than the amount deemed excessive in Merlo, because the developers suffered less than the Merlo plaintiff. This reasoning is unsupported by precedent, ignores the effect of inflation, and appears to be nothing more than an invitation to reweigh the evidence on appeal.
 
 V
 
 42
 Reliance also challenges the sufficiency of the evidence supporting the damage awards for lost investment opportunities. The trial included testimony from other real estate investors and from experts that the developers could have obtained financing to make profitable investments in repossessed real estate but for their bankruptcy. Reliance maintains, however, that this evidence does not pertain to Joseph John, because John withdrew from his partnership with Penkalaand Bigham to serve in the Gulf War, and did not rejoin them when he returned. But Reliance does not explain how John's disassociation from the partnership would have prevented him from participating in the distressed real estate market with Penkala and Bigham on a per project basis or by himself. Nor does Reliance suggest any reason why the jury was not entitled to believe John's testimony that he was prevented from participating in projects with his former partners because he was unable to cosign on loans as a result of his bankruptcy. [EOR 1094-95]
 
 
 43
 The record does not support Reliance's contention that John's counsel conceded an absence of evidence to support an award of economic damages, and urged the jury to award them anyway out of sympathy. To the contrary, John's counsel argued that the evidence supported of an award economic damages for John. His "concession" consisted of an argument in the alternative that even if the jury found the evidence insufficient to support economic damages, it should not deny John an award of damages for emotional distress.[EOR 475860]
 
 VI
 
 44
 Finally, Reliance claims the district court should have granted a new trial under Minneapolis, St. Paul & Sault Ste. Marie Railway v. Moquin, 283 U.S. 520 (1931), because the verdict resulted from passion and prejudice. A new trial is necessary where it is found that passion and prejudice tainted the jury's verdict. See id. at 521. But
 
 
 45
 [t]he fact that a jury may have been outraged by the defendant's conduct to the point of awarding excessive damages does not prove that its decision on liability was flawed . . . .
 
 
 46
 Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict. Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir. 1987).
 
 
 47
 Though the district court speculated that the jury may have been swayed by passion and prejudice in determining the size of the damage award, it made no finding that passion or prejudice influenced the verdict of liability. There is no dispute in this case that Reliance's withdrawal of its insureds' defense was wrongful. And although Reliance attempted to portray its actions as an honest mistake, the record overwhelmingly supports the jury's conclusion that Reliance acted unreasonably and in bad faith. Under Seymour, a remittitur was entirely appropriate.
 
 VII
 
 48
 We reverse the judgment of the district court inasmuch as it awards damages to the homeowners and fails to award the amount of the default judgment to the developers. In all other respects, the judgment of the district court is affirmed. Each party shall bear its own costs on appeal.
 
 
 49
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The district court had jurisdiction under 28 U.S.C. S 1332 because of diversity of citizenship.
 
 
 [2]
 We recently reiterated this view in Young v. City of Simi Valley, 217 F.3d 807, 815 (9th Cir. June 20, 2000), where we held that economic loss from a defendant's conduct can give rise to constitutional standing, even when that loss would not itself give rise to prudential standing to assert a cause of action against the defendant. In Young, a plaintiff challenged the constitutionality of a zoning ordinance restricting adult businesses. We excepted the plaintiff from the ordinary requirements of prudential standing under the overbreadth doctrine, and allowed him to mount a facial challenge to the ordinance, even assuming that the ordinance had been constitutionally applied to prohibit his particular business. Although we found that an exception was required to establish the plaintiff's prudential standing, we found that an injury to his business from even the constitutional application of the ordinance was sufficient to establish the injury in fact from the defendant's conduct necessary for constitutional standing. Id.
 
 
 [3]
 Our conclusion that debtor standing is ordinarily prudential comports with our decision in Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 n.1 (9th Cir. 1986), where we treated the decision to hear an untimely objection to a debtor's standing as implicating our discretion to hear purely legal issues not properly raised below, and not our jurisdiction to hear the case. Nor does our conclusion contradict In Re Eisen, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994), which did not involve a challenge to debtor standing that was untimely raised. We also note that in this case, the district court found that the trustee had abandoned the asset, a finding which was not clearly erroneous.
 
 
 [4]
 An insurer may, however, raise the defense of noncoverage when it was not possible that the judgment was rendered on a covered theory, as when issues relating to the asserted defense of noncoverage were not raised in the underlying suit, or when the judgment was expressly rendered on a theory of liability outside the policy. See Hogan v. Midland Ins. Co., 476 P.2d 825, 832-33 (Cal 1970); Pruyn v. Agricultural Ins. Co., 42 Cal. Rptr. 2d. 295, 302 n.15 (Ct. App. 1995).