**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF OAKLAND,
*Plaintiff-Appellant*,

v.

LORETTA E. LYNCH, Attorney
General of the United States;
MELINDA HAAG, United States
Attorney for the Northern District of
California,
*Defendants-Appellees*.

No. 13-15391

D.C. No.
3:12-cv-05245-
MEJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted
February 3, 2015—San Francisco, California

Filed August 20, 2015

Before: Richard C. Tallman and Johnnie B. Rawlinson,
Circuit Judges, and Stephen Joseph Murphy, District
Judge.[*]

Opinion by Judge Murphy

---

[*] The Honorable Stephen Joseph Murphy, III, District Judge for the U.S.
District Court for the Eastern District of Michigan, sitting by designation.

## SUMMARY[**]

### Article III Standing / Jurisdiction

The panel affirmed the district court's order dismissing for lack of jurisdiction the City of Oakland's collateral attack under the Administrative Procedure Act challenging the government's filing of a civil *in rem* forfeiture action against Harborside Health Clinic, a medical marijuana dispensary.

The panel held that Oakland had standing to bring suit under Article III where Oakland alleged a sufficient injury with respect to the erosion of its tax revenues. The panel also held, however, that judicial review under the Administrative Procedure Act was precluded because the government's decision to file the forfeiture action was committed to agency discretion by law, and because allowing the suit to proceed would impermissibly disrupt the existing forfeiture framework.

## COUNSEL

Cedric C. Chao (argued), Stanley J. Panikowski, Roy K. McDonald, Kathleen S. Kizer, and Saori Kaji, DLA Piper LLP (US), San Francisco, California; Barbara J. Parker and Kiran C. Jain, Oakland City Attorney, Oakland, California, for Plaintiff-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Stuart F. Delery, Assistant Attorney General, Melinda Haag, United States Attorney, Mark B. Stern and Adam C. Jed (argued), Attorney, Civil Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

## OPINION

MURPHY, District Judge:

### I. INTRODUCTION

The City of Oakland contests the Government's filing of a civil *in rem* forfeiture action against Harborside Health Clinic, a medical marijuana dispensary acting in accordance with local and state laws but in violation of the Controlled Substances Act. Because Oakland lacks a property interest in Harborside, it was unable to participate in the forfeiture action. Instead, Oakland initiated a collateral attack against the Government under the Administrative Procedure Act. The Government moved for dismissal pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim.

Oakland appeals from the district court's order granting dismissal for lack of subject matter jurisdiction. The Government asserts that Oakland lacks Article III standing, that judicial review is precluded, and that, if the APA applies, Oakland's suit is barred because the forfeiture action does not constitute "final agency action" and because Oakland has another "adequate remedy in court." We have jurisdiction under 28 U.S.C. § 1291. We conclude that Oakland has Article III standing, but that judicial review is precluded. We therefore affirm the district court.

## II. BACKGROUND

On July 9, 2012, the United States filed a civil *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(7) against the real property and improvements located at 1840 Embarcadero, Oakland, California. *United States v. Real Prop. & Improvements Located at 1840 Embarcadero, Oakland, Cal.*, Case No. C 12-3567. The action targeted Harborside Health Center, a retail marijuana store that distributes medical marijuana legally under state law but allegedly in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 841 and 856. Because of Harborside's purported violations of the CSA, the Government asserts the property is subject to forfeiture. 21 U.S.C. § 881(a)(7).

Pursuant to 18 U.S.C. § 983 and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Fed. R. Civ. P. Supp. R. G(5)(a)(i). Because Oakland does not assert an interest in the Harborside property, it did not file a claim in the forfeiture action.

Instead, Oakland filed the instant action, seeking a "declaratory judgment that Defendants and any agency under their authority have no right to seek civil forfeiture of the real property located at 1840 Embarcadero, Oakland, California based on purported violations of the Controlled Substances Act," as well as injunctive relief prohibiting the Government from seeking forfeiture of the property. The Government moved to dismiss Oakland's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter

jurisdiction, and Rule 12(b)(6), for failure to state an actionable claim.

Oakland asserts federal question jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Although the United States is generally immune from suit, the APA waives sovereign immunity and provides for judicial review of executive action if certain requirements are met. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204 (2012). Generally, a plaintiff must be seeking non-monetary relief for legal wrongs resulting from a final action undertaken by an agency or by an agency officer or employee. *Id.* The plaintiff must also show a lack of another adequate judicial remedy. 5 U.S.C. § 704. In this case, the district court granted the Government's 12(b)(1) motion, finding both that the Government's action was not final under the APA, and that Supplemental Rule G(5)(a)(i) constitutes an adequate judicial remedy. Because the district court found it lacked subject matter jurisdiction, it did not consider the Government's 12(b)(6) motion.

Oakland timely appealed from the district court's decision. In addition to the issue of whether the district court has subject matter jurisdiction over Oakland's action for declaratory judgment and injunctive relief, the Government questions, for the first time, whether Oakland has standing to sue.

### III. STANDING

On appeal, the Government asserts that Oakland lacks standing under Article III.[1] "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "If a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute." *Id.* Because constitutional standing implicates jurisdiction, "a challenge to constitutional standing is one 'which we are required to consider, even though raised for the first time on appeal.'" *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003) (quoting *Newdow v. U.S. Congress*, 313 F.3d 500, 503 (9th Cir. 2002)).

Standing requires injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[A]n injury must be concrete, particularized, and actual or imminent . . . ." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations and quotation marks omitted). The Government does not dispute that, if Oakland demonstrates an injury "fairly traceable to the challenged action," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*

---

[1] The Government also asserts, for the first time on appeal, that Oakland should not be permitted to bring suit on the basis of prudential standing. We will not consider the argument, because "a party waives objections to nonconstitutional standing not properly raised before the district court." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000). In any case, the Supreme Court's recent decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–87 (2014), calls into question the viability of the prudential standing doctrine.

*Inc.*, 528 U.S. 167, 180 (2000), it would be redressable by a favorable decision.

Oakland cites three direct injuries. First, it asserts injury from an expected loss of tax revenue. Second, it states that it "will suffer a rise in crime and diversion of police resources due to the increase in black market sales of cannabis that will follow if the forfeiture action succeeds." Third, Oakland argues that a forfeiture of the Harborside dispensary will injure its "proprietary interest in regulating and taxing medical cannabis and providing patients safe and affordable access to medicinal quality cannabis in accordance with California law." Because we find the expected loss of tax revenue constitutionally sufficient, we decline to address the other two alleged injuries.[2]

Oakland projected it would receive more than $1.4 million in tax revenues from the city's four permitted dispensaries in 2012, "enough to pay for a dozen badly needed additional police officers or firefighters." A substantial portion of this sum would be attributable to Harborside, as it is "reputed to be the largest dispensary in the country." As of October 10, 2012, Harborside had "paid city and state taxes in excess of one million dollars," and "customers pay an 8.75% sales tax on all purchases."

---

[2] Oakland also briefly references potential injuries to its citizens. "If the DOJ succeeds in its forfeiture action, Harborside will not have a secure and reliable place in which to operate," and "patients cannot obtain the medicine that California voters have decided should be available to them." As a municipality, however, Oakland may not assert injuries to its citizens, but must allege injury of its own. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004).

An expected loss of tax revenue can constitute a sufficient injury for purposes of Article III standing. In *City of Sausalito v. O'Neill*, Sausalito, California brought suit to enjoin the National Park Service ("NPS") from implementing a plan to develop and rehabilitate a former military base adjacent to the city. 386 F.3d 1186, 1194 (9th Cir. 2004). Sausalito alleged the plan violated a number of environmentally-oriented federal statutes. *Id.* To establish Article III injury, it cited the harm that would result from the addition of an expected 2,700 daily visitors to the city, including congested roadways, increased crime, and lost sales and property tax revenue ("due to impaired vehicular movement and commerce rendering Sausalito less attractive to business"). *Id.* at 1198. The district court held that Sausalito sufficiently demonstrated Article III injury, and we affirmed, finding the asserted harm "cognizable as both an aesthetic injury and . . . as an economic injury." *Id.* at 1198–99.

Oakland's expected loss of tax revenue satisfies the requirements of Article III. In *Sausalito*, it was conceded that the NPS plan would "result in an increase in local traffic, an increase in air pollutant emissions, and an incremental contribution to the cumulative noise environment." *Id.* at 1199. Because Sausalito alleged "that the aesthetic damage will erode its tax revenue," we found economic injury that was actual or imminent, and not conjectural or hypothetical. *Id.* Oakland's injury is even less speculative. If Harborside is closed, it will no longer provide Oakland with tax revenue, either directly through income taxes or indirectly through customer sales taxes. And our precedent makes clear that the deprivation of revenue constitutes injury under Article III.

The Government's argument to the contrary is unavailing. It argues that Oakland's "claim of lost tax revenues" is

uncertain, because it "assumes that a forfeiture will be ordered, that marijuana sales are not diverted to other dispensaries in Oakland, and that the new tenant of the 1840 Embarcadero property will provide the City with less revenue than the dispensary." We agree that Oakland's claim relies on a forfeiture being ordered, but find that this alone is not so speculative as to undermine the claim. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur." (internal quotation marks omitted)). We give no weight to the unsupported claims that other dispensaries will see increased sales to make up for Harborside's losses, or that a new tenant might provide more tax revenue than Harborside. It is the Government's assertions that are speculative; what is certain is that closing Harborside will lead to a real and immediate erosion in Oakland's tax revenues.

We find that Oakland has standing to bring suit under Article III. Oakland has alleged a sufficient injury with respect to the erosion of its tax revenues. The loss of revenues would be directly attributable to the Government's forfeiture action and redressable by a favorable ruling.

## IV. JUDICIAL REVIEW UNDER THE APA

In addition to meeting the requirements of constitutional standing, "[a] plaintiff must also satisfy the non-constitutional standing requirements of the statute under which he or she seeks to bring suit." *City of Sausalito*, 386 F.3d at 1199. Unlike Article III standing, non-constitutional analysis is a "purely statutory inquiry" that "does not go to our subject matter jurisdiction." *Id.* The Government argues that the APA

provides no basis for Oakland to bring a collateral action to enjoin the forfeiture proceeding. We agree.

As a threshold matter, the APA does not apply if the "agency action is committed to agency discretion by law" or if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1), (2). The APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* § 702. Because the Government's decision to file the forfeiture action is committed to agency discretion, and because Oakland's suit is impliedly forbidden by the existence of the forfeiture statute, judicial review is precluded.

"[L]itigation decisions are generally committed to agency discretion by law, and are not subject to judicial review under the APA." *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1339 (9th Cir. 1992). "[R]eview is precluded when plaintiff's complaint is primarily that the agency made the wrong choice when making an informed judgment." *Merrill Ditch-Liners, Inc. v. Pablo*, 670 F.2d 139, 140 (9th Cir. 1982) (internal quotation marks omitted).

Here, the Government made an informed judgment to initiate a civil forfeiture proceeding against Harborside. It had to consider the likelihood that a violation actually occurred, whether agency resources were available and should be expended, whether an action would be likely to succeed if initiated, and whether the action was consistent with the Government's policies and goals. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (identifying these factors as important when considering whether an exercise of discretion is suitable for judicial review). The Government's decision relied on the exercise of the equivalent of prosecutorial

discretion and is thus immune from judicial review under the APA. *See Didrickson*, 982 F.2d at 1339.

The existing forfeiture framework also impliedly forbids judicial review of Oakland's claims. It is a "well-established principle that, in most contexts, a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotation marks omitted). "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). In *Hinck*, the Supreme Court held that a section of the Internal Revenue Code provided the plaintiff taxpayers with an adequate remedy, and that judicial review was therefore not available, because the code section "provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief." 550 U.S. at 506.

Granting Oakland a legal remedy under the APA would impermissibly provide for duplicative review. As with the statute in *Hinck*, the forfeiture statute provides a forum for adjudication (the court in which the action is brought), a limited class of potential plaintiffs ("any person claiming an interest in the seized property"), a limitations period (claims must be filed within "30 days after the date of service of the Government's complaint or . . . after the date of final publication of notice of the filing of the complaint"), a standard of review (the claimant may dispute that the property in question was involved in a prohibited transaction or attempted transaction), and authorization for judicial relief (in the forfeiture proceeding). 18 U.S.C. §§ 981–983. Oakland's complaint seeks "a declaratory judgment that [the Government has] no right to seek civil forfeiture of the

[Harborside] property" and "a permanent injunction enjoining [the Government] . . . from seeking forfeiture of the [Harborside] property." The forfeiture proceeding, and not a collateral action, is the proper venue to seek such relief.

The fact that Oakland is unable to participate in the forfeiture action, because it does not possess an interest in the Harborside property, is irrelevant. Congress created a framework permitting only certain parties to bring claims, and allowing collateral attacks would disrupt that framework by giving third parties a greater ability to initiate challenges. Supplemental Rule G(5)(a)(ii) requires an interested party to file a claim within 30 days of service. A general civil action under the APA, however, is governed by a six-year limitations period. 28 U.S.C. § 2401(a). Permitting parties to file under the APA and circumvent the short deadlines Congress established in the forfeiture law would make mush of the law. Additionally, allowing a collateral action to proceed would render meaningless the forfeiture statute's clear language limiting parties who may institute a forfeiture challenge to those with a property interest.

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199 (2012), upon which Oakland relies, is inapposite. In that case, the owner of property near the site of a proposed Indian casino filed an action under the APA challenging the Secretary of the Interior's decision—made pursuant to the Indian Reorganization Act—to take land into trust on behalf of the tribe. *Id.* at 2202–03. The plaintiff alleged economic, environmental, and aesthetic harms, but did not assert a property interest in the land. *Id.* Because the APA's waiver of immunity does not apply if another statute "grants consent to suit [and] expressly or impliedly forbids the relief which is sought," 5 U.S.C.

§ 702, and because a separate statute, the Quiet Title Act, authorized suits by plaintiffs with a "right, title, or interest" in real property, 28 U.S.C. § 2409a(d), the federal government argued that the plaintiff's suit was barred. *Match-E-Be-Nash*, 132 S. Ct. at 2204–05.

But the Supreme Court held that the suit was not barred, reasoning that "[w]hen a statute is not addressed to the type of grievance which the plaintiff seeks to assert, then the statute cannot prevent an APA suit." *Id.* at 2205 (internal quotation omitted). The Supreme Court explained that the plaintiff was "bringing a different claim" and "seeking different relief" from "the kind the [Quiet Title Act] addresses." *Id.* at 2209. Oakland argues that, because its grievances concern public health and safety, tax revenues, and its regulatory scheme, which are different from Harborside's grievances, it is not barred from bringing suit under the APA. The argument fails, however, because both parties do in fact seek the same relief: to stop the forfeiture.

Finally, even if Oakland overcame the preceding, Section 704 of the APA would nonetheless bar its claims. Judicial review only applies to "[a]gency action made reviewable by statute" (not relevant here), and "*final agency action* for which there is *no other adequate remedy* in a court . . . ." 5 U.S.C. § 704 (emphasis added). The Government's decision to file the forefeiture action is not "final," because it is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). A forfeiture action simply makes evident the Government's intention to challenge the status quo; any rights, obligations, and legal consequences are to be

determined later by a judge. And as discussed above, there is another adequate remedy—the forfeiture action.

## V. CONCLUSION

The City of Oakland has Article III standing to challenge the Government's forfeiture action because the closing of Harborside will lead to a decrease in property and sales tax revenues. Judicial review under the Administrative Procedure Act is precluded, however, because the Government's decision to file the forfeiture action is committed to agency discretion by law, and because allowing the suit to proceed would impermissibly disrupt the existing forfeiture framework.

For these reasons, we **AFFIRM** the district court's dismissal in favor of the defendant, the United States.

Each party shall bear its own costs on appeal.